IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| INTL FCSTONE FINANCIAL, INC. and TRICIA HARROD, <br><br>  Movants. <br><br> ANTHONY TRISTANI, RADFORD TERRY, and MARK MARSHALL, <br><br>  Plaintiffs, <br><br> v. <br><br> OPTIONSELLERS.COM, INC. and JAMES CORDIER, <br><br>  Defendants. | § § § § § § § § § § § § § § § § § § § Case No. 6:21-mc-0004-JDK |

**OPINION AND ORDER**

INTL FCStone Financial, Inc. and Tricia Harrod ("Movants") filed a motion to Quash or Modify Subpoena or, in the Alternative, for a Protective Order. Docket No. 1. For the reasons discussed below, the Court **DENIES** the motion.

**I.   BACKGROUND**

This miscellaneous action relates to a separately docketed case: *Tristani, et al. v. OptionSellers.com, Inc., et al.*, 6:19-cv-585 (hereinafter "*Tristani*"). In *Tristani*, Plaintiffs Anthony Tristani, Radford Terry, and Mark Marshall are suing Defendants OptionSellers.com, Inc. and James Cordier for damages incurred when their stock portfolios suffered significant losses. 6:19-cv-585-JDK, Docket No. 2. In addition to suing OptionSellers and Cordier in federal court, Plaintiffs are separately arbitrating

1

claims against INTL FCStone—the futures commission merchant that executed trades at Defendants' direction—and OptionSellers. 6:19-cv-585-JDK, Docket No. 24 at 2; Docket No. 1 at 5.

In *Tristani*, Plaintiffs sought to depose Ms. Harrod, INTL FCStone's Chief Risk Officer and Manager. 6:19-cv-585, Docket No. 48; Docket No. 8 at 1. On January 28, 2021, Plaintiffs filed a Notice of Intent to Serve Tricia Harrod with a Subpoena to Testify at a Deposition in a Civil Action with Subpoena Duces Tecum. 6:19-cv-585, Docket No. 48.

Ms. Harrod and INTL FCStone then moved to quash or modify the subpoena, arguing that Ms. Harrod's deposition is not relevant to the *Tristani* litigation and that Plaintiffs seek to "make an end run" around the rules governing parallel arbitration proceedings. Docket No. 1 at 1–2.[1] In the alternative, Movants request the Court enter a Rule 26 protective order to prohibit the deposition. *Id.*

## II. ANALYSIS

### A. Motion to Quash

Federal Rule of Civil Procedure 45 governs subpoenas. It provides that a court is required to quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

---

[1] Movants originally filed this motion in the Western District of Texas. *See In re Subpoena of Tricia Harrod*, SA-21-mc-026-FB. By agreement of the parties, the motion was transferred to the undersigned, who is also presiding over the *Tristani* matter.

The movant bears the burden to show that a subpoena should be quashed or modified. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "Generally, modification of a subpoena is preferable to quashing it outright." *Id.* (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)).

Here, Movants argue that the Court should quash or modify Ms. Harrod's subpoena because (1) her testimony would be irrelevant in the *Tristani* litigation under Federal Rule of Civil Procedure 26 and (2) Plaintiffs have an abusive purpose for the testimony. Docket No. 1 at 6, 8. The Court addresses each argument in turn.

### 1. Movants have not shown that Harrod lacks relevant information.

Citing Rule 26(b)(1), Movants argue that Harrod was not involved in Defendants' alleged "reckless mismanagement" of Plaintiffs' accounts and thus her testimony is irrelevant in the *Tristani* case. Docket No. 1 at 6–8. Plaintiffs contend that, under Harrod's management, INTL FCStone monitored the margin-risk levels of OptionSellers and Cordier's trading activity, which bear directly on their claims in *Tristani*. Docket No. 8 at 4–6, 9–10.

The scope of discovery in federal court is broad. Under Rule 26, a party to a civil action may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1); *accord Wiwa*, 392 F.3d at 820.[2] Evidence is relevant if it "has any tendency to make a fact more or less probable

---

[2] Rule 26(b)(1) states in full:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

3

than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401(a)–(b). In evaluating relevance, the Court's discretion is broad, and the bar is low. *Hicks-Fields v. Harris County, Tex.*, 860 F.3d 803, 809 (5th Cir. 2017). Irrelevance is a ground for quashing a deposition as unduly burdensome. *Wiwa*, 392 F.3d at 818.

Movants have not shown that Harrod's testimony is irrelevant. The basis of the complaint in *Tristani* is that Defendants OptionSellers and Cordier recklessly mismanaged Plaintiffs' investment accounts. *See* 6:19-cv-585, Docket No. 60 at 1 (citing Docket No. 2 at ¶ 1). It is undisputed that INTL FCStone executed Defendants' trading activity. 6:19-cv-585-JDK, Docket No. 24 at 2. It is likely, then, that an INTL FCStone executive would possess discoverable knowledge of the relative riskiness of Defendants' trading strategy. Indeed, in other depositions, Plaintiffs apparently discovered that Defendants discussed risk management with INTL FCStone and tracked the risk of different investments. Docket No. 8, Ex. C at 33:5–12, 36:3–37:1. Further, Plaintiffs provide a list of relevant questions to be asked at Harrod's deposition, including:

- Whether [INTL] FCStone communicated [] risks to OptionSellers and Cordier;
- Whether OptionSellers and Cordier heeded any warnings they received from [INTL] FCStone regarding the trading risks they were taking in Plaintiffs' accounts;
- Whether OptionSellers and Cordier implemented the trading strategy in

---

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

4

        Plaintiffs' accounts as they represented they would implement; and
- Whether or not [INTL] FCStone had communications with OptionSellers or Cordier about reducing risk levels in the accounts under its management, including Plaintiffs' accounts.

Docket No. 8 at 2–3.

Movants argue that these questions are irrelevant because INTL FCStone was not responsible for monitoring trading activities or protecting account holders and because Plaintiffs do not allege Movants made any misrepresentations to *them*. Docket No. 9 at 5–6. But even if true, that information would be relevant to Plaintiffs' claims against Defendants OptionSellers and Cordier. Again, information may be relevant even if it is not necessary, summative, or essential to a party's claims or defenses. *See* FED. R. CIV. P. 26(b)(1). Movants have thus failed to satisfy their burden under Rule 45. *See* FED. R. CIV. P. 45(d)(3)(A); *Barbara Meier, et al., v. UHS of Delaware, Inc., et al.*, 4:18-cv-00615, 2021 WL 1226619, at *4 (E.D. Tex. Apr. 1, 2021) (declining to quash a subpoena on relevance grounds because, "[b]earing in mind that Plaintiffs do not have a high burden to meet in showing relevance, the Court is persuaded they have done so here.").

### 2. Movants have not shown that the deposition is abusive.

Movants also ask the Court to quash the subpoena because INTL FCStone is separately and contemporaneously arbitrating claims with Plaintiffs and Defendant OptionSellers. Docket No. 1 at 8–10. But, as Plaintiffs argue, nothing in Rule 45 justifies quashing a subpoena merely because there is a related arbitration. Docket No. 8 at 4.

Movants cite several cases to suggest that the Court has the discretion to prevent an "abusive" deposition. Docket No. 1 at 9–10. But Movants have not shown how deposing Harrod would be "abusive" here, and nothing in the cited cases does either. Rather, Movants' cases state that a court may limit the availability of arbitration generally,[3] utilize judicial discretion to narrow discovery in view of parallel civil and criminal proceedings,[4] stay discovery when a suit has been stayed for arbitration,[5] stay a case in view of parallel arbitration,[6] and limit discovery in a trial proceeding that followed a completed arbitration.[7] None of these cases states—or even suggests—that a court should quash a subpoena because the deponent and some of the parties are involved in a separate arbitration proceeding. Further, while "a court is not required to blind itself to the purpose for which a party seeks information" and should exclude discovery purposed for "use in proceedings other than the pending suit," *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352–53 n.17 (2017), the Court has held that the requested deposition is relevant to—and

---

[3] *Janvey v. Alguire*, 847 F.3d 231, 244 (5th Cir. 2017).

[4] *Campbell v. Eastland*, 307 F.2d 478,487 (5th Cir. 1962).

[5] *Dinh v. Salins*, 20 P.3d 936, 939 (Wash. 2001); *Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D 558, 566 (S.D. Miss. 1976).

[6] *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir. 2004); *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002); *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 407 (7th Cir. 1990), *abrogated by on other grounds*, *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524 (7th Cir. 1996); *Elsasser v. DV Trading, LLC*, 444 F. Supp. 3d 916, 929 (N.D. Ill. 2020); *Vail Services Group, LLC v. Dines*, No. 17-cv-02428-CMA-KLM, 2018 WL 3069525, *2 (D. Co. June 21, 2018); *G&G Closed Circuit Events, LLC v. Castillo*, 14-cv-02073, 2017 WL 1079241, at *11 (N.D. Ill. Mar. 22, 2017); *WMS Gaming, Inc. v. IGT*, 31 F. Supp. 3d 974, 980 (N.D. Ill. 2014); *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529-30 (7th Cir. 1996); *In Re Merrill Lynch Trust Co.*, 235 S.W.3d 185, 195 (Tex. 2007); *In re Devon Energy Corp.*, 332 S.W.3d 543, 549 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

[7] *Park v. First Union Brokerage Services, Inc.*, 926 F. Supp. 1085, 1090 (M.D. Fla. 1996).

therefore permissible in—the instant litigation. The Court, then, declines to limit discovery in *Tristani* merely because there is a separate, on-going arbitration.

### B. Motion for Protective Order

In two sentences, Movants alternatively request a Rule 26(c) protective order, asking the Court to (1) require that any deposition proceed remotely and (2) limit "questioning to facts regarding INTL actually alleged in the Complaint" and "use [of] the transcript and information obtained during her deposition to *Tristani*." Docket No. 1 at 10. Plaintiffs argue that, absent a showing of good cause for their requests, Movants have not met their burden under Rule 26. Docket No. 8 at 10–11.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" FED. R. CIV. P. 26. Movants must show that "a protective order is necessary." *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017). Necessity "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Id.* (*quoting In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). "[B]road allegations of harm, unsubstantiated by specific examples, are insufficient to justify issuance of a protective order." *ION, Inc. v. Sercel, Inc.*, 5:06-cv-236, 2009 WL 10677595, at *2 (E.D. Tex. May 20, 2009) (quoting *AG-Innovations, Inc. v. United States*, 82 Fed. Cl. 69, 78 (Fed. Cl. 2008)).

Here, Movants do not show good cause for any element of the requested protective order. First, Movants do not explain why the deposition should proceed remotely. Second, Movants do not explain the necessity of limiting Plaintiffs'

7

questioning to the Complaint's express mention of INTL FCStone. And third, Movants provide no support for the request that the deposition be used only in the underlying litigation. While Movants repeatedly assert that Plaintiffs intend to use Harrod's deposition in their pending arbitration, *see, e.g.,* Docket No. 8 at 2, these speculative claims amount to "broad allegations of harm, unsubstantiated by specific examples." *See ION, Inc.*, 2009 WL 10677595, at *2. Indeed, Movants have not provided a "particular and specific demonstration" that Plaintiffs' will wrongfully use the deposition. *See In re Terra Intern., Inc.*, 134 F.3d at 306.

Accordingly, the Court declines to enter a protective order because Movants have not shown that "specific prejudice or harm will result if no protective order is granted." *See McBride v. Hobby Lobby Stores, Inc.*, SA-18-cv-00197-XR, 2018 WL 4839108, at *2 (W.D. Tex. Oct. 4, 2018) (citing *EEOC*, 876 F.3d at 698).

## III.  CONCLUSION

The Court **DENIES** Movants' Motion to Quash or Modify Subpoena or, in the Alternative, for a Protective Order (Docket No. 1).

So **ORDERED** and **SIGNED** this **20th** day of **April, 2021.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE